DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Terri Brooks, appeals from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that terminated her parental rights to two of her minor children and placed them in the permanent custody of Wayne County Children Services Board ("CSB"). We affirm.
 I {¶ 2} Brooks is the natural mother of J.O., born December 1, 1990, and F.O., born June 25, 1992. Brooks also has an older child, S.B., who has been placed in long-term foster care and is not directly at issue in this case. The father of J.O. and F.O. is not a party to this appeal.
 {¶ 3} The problems in this family stem from Brooks' long history of abusing alcohol and crack cocaine. By her own admission, Brooks was introduced to crack cocaine by the children's father and began using it before her second child, J.O., was born. CSB first became involved with Brooks and her family shortly after her third child, F.O., was born in 1992. Brooks entered her first drug treatment program at that time.
 {¶ 4} During the next decade, Brooks demonstrated a repeated pattern of achieving sobriety for a short period of time and then relapsing. Consequently, the children have been in and out of CSB custody several times during their lives. Due to her repeated relapses, Brooks has been unable to secure continued employment or to maintain a stable residence and she has been convicted of various criminal offenses including theft and passing bad checks. Brooks is aware that her problem with drugs and alcohol has had a negative impact on her children and that she is unable to provide a suitable home for them while she is "using."
 {¶ 5} The current case commenced on February 20, 2001. J.O. and F.O. were again removed from the home due to concerns by CSB that Brooks was using crack cocaine. On March 29, 2001, the trial court entered separate adjudications that J.O. and F.O. were neglected children. CSB moved for permanent custody of both children on January 17, 2003. Following a hearing, the trial court granted the motion and placed the children in the permanent custody of CSB.
 {¶ 6} Brooks timely appealed, raising one assignment of error.
 II Assignment of Error
"The Trial Court erred as a matter of law in granting [csb's] motion for permanent custody of [J.O.] and [F.O.] when such determination was not supported by clear and convincing evidence that permanent custody was in the children's best interest as required by R.C. 2151.414(B)(1) and (D)."
 {¶ 7} Brooks contends that the trial court did not have ample evidence before it to support its conclusion that permanent custody was in the best interest of J.O and F.O. We disagree.
 {¶ 8} Termination of parental rights is an alternative of last resort, but is sanctioned when necessary for the welfare of a child. In re Wise (1994), 96 Ohio App.3d 619, 624, citing Inre Cunnigham (1979), 59 Ohio St.2d 100, 105. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, who is not abandoned or orphaned, it must find by clear and convincing evidence that (1) either (a) the child has been in the temporary custody of the agency for at least twelve months of the prior 22-month period, or (b) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C.2151.414(B)(1) and 2151.414(B)(2).
 {¶ 9} Brooks challenges the trial court's finding on only the second prong of the test, whether permanent custody was in the best interest of J.O. and F.O. To satisfy the best interest prong of the permanent custody test, CSB was required to establish, by clear and convincing evidence, that the grant of permanent custody to the agency is in the best interests of the children, based on an analysis under R.C. 2151.414(D). See R.C.2151.414(B)(1) and 2151.414(B)(2). When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must:
"[C]onsider all relevant factors, including, but not limited to, the following:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C.2151.414(D)(1)-(4).[1]
 {¶ 10} "Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors."In re Smith, 9th Dist. No. 20711, 2002-Ohio-34; see, also, Inre Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, at ¶ 24.
 {¶ 11} Although many witnesses testified that Brooks loves her children and that she seems to be an appropriate caregiver when she is sober, she has been unable to achieve sobriety on an ongoing basis. There was substantial evidence, including Brooks' own testimony, that Brooks has repeatedly relapsed and that she cannot provide a stable home for her children while she is using crack cocaine. During her many relapse periods, she moved from place to place, including out of state, and she sometimes took the children with her and sometimes left them with their father. The children's father is also a crack addict and a person who Brooks describes as abusive and a negative influence on her.
 {¶ 12} Due to all the moves, the children lived in many places and attended many different schools. J.O. told his counselor that he had attended so many different schools that he could not remember them all. There was also evidence that the children missed a lot of school during the periods when Brooks was using drugs. During one period, the children missed so much school that they were in danger of failing.
 {¶ 13} There was testimony that the children worry about Brooks' drug addiction and have a desire to protect her. As the trial court indicated, "It goes without saying that this is not their job." After the children returned to live with Brooks on each occasion, CSB was not always immediately aware when Brooks began using drugs again. The children typically were aware, however. Each child had indicated that they were able to sense when their mother was using drugs. In fact, CSB sometimes became aware that Brooks had relapsed because the children began to exhibit behavior problems.
 {¶ 14} At the time of the hearing, J.O. and F.O. were living in the same foster home, had adjusted to living there, and seemed to be happy. The foster parents were involved in their lives and had provided them with a stable home. The children were attending school regularly and their school performance was improving. The foster mother made sure that the children attended counseling regularly and their behavior was beginning to show improvement.
 {¶ 15} Two witnesses testified that both children wanted to be reunited with their mother. The evidence further demonstrated, however, that the children probably do not understand what is best for them because they have never had a chance to live a normal childhood. J.O. had indicated that he expected to return to his mother because that is what always happens.
 {¶ 16} The guardian ad litem testified and filed a written report indicating that permanent custody was in the children's best interests. The guardian ad litem was most concerned about the repeated failures by Brooks to maintain sobriety and expressed "grave concerns regarding her ability to put her children first before her desire for drugs and alcohol." She explained that it was difficult for her to make such a recommendation because she believed that Brooks loved her children and they loved her and that terminating the relationship would be hurtful to the children. The guardian ad litem further explained, however, that this family relationship is not a healthy one because Brooks has continually "made very inappropriate decisions regarding her children's welfare and has placed her children at risk." The children have lived their entire lives in "turmoil * * * passed around from parent to parent to relatives and to foster care[.]"
 {¶ 17} The custodial history of J.O. and F.O. has been filled with instability and uncertainty. Brooks' abuse of alcohol and drugs has impacted her children's lives since F.O. was born in 1992. Since that time, the children have been in and out of CSB custody. The children were first removed in 1992 and they stayed in foster care for approximately one year while Brooks completed drug treatment and appeared to have achieved sobriety. CSB returned the children to Brooks' home in 1993 and maintained protective supervision for a period of time. The case was closed in 1994 because Brooks moved to North Carolina with the children.
 {¶ 18} CSB again became involved with J.O. and F.O. in July 1994. The children were living with their father at that time and Brooks was still residing in North Carolina. Brooks later returned to Ohio and was able to be reunited with her children the next year. That case was closed in 1995. CSB again became involved with the family in March 1999. The children were again residing with their father and Brooks was again living out of state. That case was apparently later closed but the specific details are not clear from the record.
 {¶ 19} The current case commenced on February 20, 2001 due to renewed concerns of drug abuse by both parents. The children's father had apparently left them in someone else's care and did not return. During the current case plan, Brooks again completed a drug treatment program and, following negative drug screens, CSB returned her children to her custody on February 13, 2002, with CSB maintaining protective supervision.
 {¶ 20} Not long after the children returned home, however, Brooks relapsed and began using crack cocaine again. The children were again removed from the home in August of 2002. Brooks apparently continued using drugs, stopped submitting urine samples, and did not maintain regular contact with her caseworker or the children. On January 14, 2003, Brooks was arrested for shoplifting a case of beer and a DVD player. She told the arresting officer that she had committed the offense because of a crack problem. She was later convicted of theft. At the time of the permanent custody hearing, Brooks was serving a period of incarceration stemming from her most recent conviction. At that time, she expressed a renewed commitment to sobriety.
 {¶ 21} CSB clearly demonstrated that it has tried repeatedly to help Brooks achieve and maintain sobriety so that this family could remain intact. This Court has not seen many recent permanent custody cases where the agency appears to have been so committed to reunifying a family. For more than a decade, however, Brooks has repeatedly gone through drug treatment only to later relapse. She has been unable to provide a suitable home for her children on an ongoing basis.
 {¶ 22} Despite completing several drug treatment programs, Brooks has continued to blame her drug problem on the children's father and the drugs themselves and has failed to accept responsibility for her own behavior. The children have even demonstrated an understanding that Brooks is not responsible for the situation they are in. It is time that these two children, who have lived through this chaotic situation for almost twelve years, are able to have some stability in their lives and to have some sense of a normal childhood.
 {¶ 23} There was evidence that both children need stability in their lives, more so than other children, because J.O. has been diagnosed with bipolar disorder and F.O. has ADHD. Both children have lived their lives without any long-term stability. Brooks was unable to provide a stable home for her children because she had just begun drug treatment again. All evidence indicated that Brooks would not be able to provide a home for her children in the near future. Her counselors indicated that Brooks would need at least six to nine months, perhaps even a year, to address her drug problem. The evidence further indicated that Brooks had relapsed again and again despite repeated attempts over an 11-year period to achieve sobriety. As the trial judge capably stressed, "[t]he Court is not required to experiment with the lives of these children as a reward or incentive to the mother for her good behavior."
 {¶ 24} The trial court had ample evidence before it that permanent custody to CSB was in the best interests of J.O. and F.O. The assignment of error is overruled.
 III {¶ 25} The assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
Carr, P.J., and Slaby, J., concur.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
[1] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case.